First Division
February 22, 2010

No. 1-07-1656

| | |
|---|---|
| JOHN W. COURTNEY, MARY FOERNER, FRANCES T. LAX, LAWRENCE M. GREEN, ANNE MACKAY, as executor for the Estate of IRENE L. KORTAS, KENNETH NEWTON and DAVID PIECUCH, on behalf of themselves and all others similarly situated, | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | |
| v. | No. 06 CH 02085 |
| PENNY S. PRITZKER, THOMAS J. PRITZKER, ALVIN DWORMAN, COAST-TO-COAST FINANCIAL CORPORATION, NEAL T. HALLERAN, WILLIAM C. BRACKEN, MONTE KURS, NELSON L. STEPHENSON, GLEN MILLER, MARC A. WEISMAN, STEVEN MANN, WALTER F. RUSNAK and ERNST & YOUNG LLP, | Honorable Philip L. Bronstein |
| Defendants-Appellees. | Judge Presiding |

PRESIDING JUSTICE HALL delivered the opinion of the court:

This suit is brought by a class of former depositors of Superior Bank FSB (Superior Bank), who lost money on deposits exceeding the $100,000 federally insured limit when the bank failed and was placed in receivership by the Federal Deposit Insurance Corporation (FDIC). Suit was filed against several defendants: the bank's officers and directors; the bank's auditor, Ernst & Young LLP; as well as the bank's holding company, Coast-to-Coast Financial Corporation (CCFC), and several of CCFC's principals, which included Penny S. Pritzker, Thomas J.

No. 1-07-1656
Pritzker, and Alvin Dworman.[1]

Plaintiffs filed their initial complaint in the circuit court in January 2002. In the complaint, they alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2002)), and the Illinois Public Accounting Act (Accounting Act) (225 ILCS 450/0.01 et seq. (West 2000)). Defendants removed the matter to the federal district court after plaintiffs amended the complaint by adding a federal civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§1961 through 1968 (2000)).

In federal district court, plaintiffs filed a five-count fourth amended complaint alleging in count I that defendants violated the Consumer Fraud Act by "providing false financial statements regarding the financial condition of the bank and erroneous legal advice regarding FDIC insurance coverage"; in count II that CCFC and Ernst & Young violated RICO (18 U.S.C. §1962(c) (2000)), by withdrawing funds from the bank under cover of false financial statements approved by Ernst & Young; in count III that Ernst & Young violated the Accounting Act (225 ILCS 450/30.1 (West 2000)) by knowingly or negligently approving financial statements that drastically overstated the value of the bank's assets; and in count IV that Ernst & Young knowingly aided and abetted CCFC's RICO violation. See Courtney v. Halleran, No.

--------

[1] Plaintiffs dropped their claims against Dworman.

-2-

No. 1-07-1656

02 C 6926 , slip op. at 1-2, 2004 WL 2095674 (N.D. Ill. September 14, 2004) (Courtney I).

In count V, plaintiffs sought a declaration that a 2001 settlement agreement in which the FDIC settled the bank's claims against CCFC's principals for $460 million was null and void because it would divert the bank's assets (proceeds from Ernst & Young settlement) to CCFC in violation of the priority scheme for distribution of the bank's assets established by section 1821(d)(11)(A) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (12 U.S.C. §1811 et seq. (2000) (FIRREA). See (Courtney I); Courtney v. Halleran, No. 02 C 6926, slip op. at 4, 2005 WL 241471 (N.D. Ill. February 1, 2005) (Courtney II).

In September 2004, the federal district court dismissed plaintiffs' federal claims with prejudice and declined to exercise supplemental jurisdiction over the state-law claims, dismissing those claims without prejudice. Courtney I, slip op. at 8. The district court dismissed the two RICO counts (II and IV) with prejudice, finding that plaintiffs lacked standing to bring these claims because the injuries they suffered were derivative of the injuries the bank itself suffered and therefore the claims must be brought by the FDIC on plaintiffs' behalf or through a derivative suit after unsuccessful demand upon the FDIC. Courtney I, slip op. at 7.

The district court also determined that plaintiffs' request

-3-

for injunctive and declaratory relief in count V was not ripe for decision because at the time there was no actual or pending settlement that would cause Ernst & Young funds to be distributed. See Courtney I, slip op. at 8; Courtney II, slip op. at 4.

In December 2004, the FDIC and Ernst & Young agreed to a settlement wherein the FDIC agreed to release all claims against Ernst & Young in exchange for $125 million. At a hearing before the court on January 27, 2005, the FDIC indicated that it would not pay out any amounts due on account of the Ernst & Young settlement until February 7, 2005, due to unresolved issues remaining in the litigation. Courtney II, slip op. at 2-3.

In February 2005, the district court denied plaintiffs' motion for reconsideration of counts II and IV of the fourth amended complaint for the same reasons it originally dismissed those counts. Then, after granting the plaintiffs' motion to reconsider count V on the ground that payments from the Ernst & Young settlement were imminent, thereby making the issue of the legality of the distribution scheme agreed upon in the 2001 settlement ripe for consideration, the court denied plaintiffs' request to enjoin disbursal of funds from the Ernst & Young settlement.

The court determined that pursuant to section 1821(j) of the FIRREA (12 U.S.C. §1821(j) (2000)), it was precluded from granting the requested injunctive relief because the FDIC would

No. 1-07-1656

be acting pursuant to its enumerated powers as conservator and receiver when it honored the terms of the 2001 settlement in disbursing the funds received from the Ernst & Young settlement. Courtney II, slip op. at 5-7.

On January 31, 2006, plaintiffs refiled their state-law claims in the circuit court for violations of the Consumer Fraud Act and Accounting Act, adding a claim for commercial bad faith.

In a decision dated May 7, 2007, the Seventh Circuit Court of Appeals, in Courtney v. Halleran, 485 F.3d 942 (7th Cir. 2007), affirmed the district court's decision of February 2005, which had denied plaintiffs' motion for reconsideration of the dismissed RICO counts (II and IV), and denied the request for injunctive relief in count V.

On May 16, 2007, the circuit court granted defendants' motions dismissing plaintiffs' state-law claims. The court granted Alvin Dworman's motion to dismiss for lack of personal jurisdiction pursuant to section 2-301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 2006)). The court dismissed all of plaintiffs' claims with prejudice for lack of standing pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 1996)). The circuit court also dismissed plaintiffs' claims under the Consumer Fraud Act and Accounting Act with prejudice pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 1996)).

Plaintiffs were given two weeks to advise the circuit court

as to whether they would seek leave to amend to cure the section 2-615 dismissals. On June 4, 2007, plaintiffs advised the circuit court that they would not seek leave to amend their complaint and instead proceeded with this appeal. We affirm.

ANALYSIS

Plaintiffs first contend the circuit court erred in dismissing their complaint with prejudice for lack of standing pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2002)). The standard of review on appeal from a ruling granting a section 2-619(a)(9) motion to dismiss is de novo. Travis v. American Manufacturers Mutual Insurance Co., 335 Ill. App. 3d 1171, 1174, 782 N.E.2d 322 (2002).

As a general rule, depositors, as a class, lack standing to pursue claims against bank officers and directors accused of causing a bank to fail, because the cause of action belongs to the bank or its receiver and not to the depositors, whose injuries are generally indistinguishable from one another and derivative of the injuries suffered by the bank. See, e.g., Adato v. Kagan, 599 F.2d 1111, 1117 (2d Cir. 1979) ("As a general rule, wrongdoing by bank officers that adversely affects all depositors creates a liability which is an asset of the bank, and only the bank or its receiver may sue for its recovery").

The rationale for this rule is that permitting individual depositors to bring actions for such injuries would invariably lead to a multiplicity of suits and potentially impair the rights

of other creditors and claimants with superior interests. In re Sunrise Securities Litigation, 916 F.2d 874, 887-88 (3d Cir. 1990). An exception to the rule exists where an individual depositor suffers an injury that is distinct from the injury suffered generally by all depositors. Adato, 599 F.2d at 1117.

Plaintiffs have attempted to circumvent the "standing" obstacle by styling their claims as purported direct claims for consumer fraud and negligent misrepresentation. Plaintiffs contend that defendants violated the Consumer Fraud Act by fraudulently inducing them to deposit funds into their accounts by providing false financial statements regarding the financial condition of the bank and erroneous legal advice regarding FDIC insurance coverage. Plaintiffs further maintain that Ernst & Young violated section 30.1 of the Accounting Act (225 ILCS 450/30.1 (West 2000)), by knowingly or negligently approving financial statements overstating the value of the bank's assets with the knowledge that plaintiffs would rely on these statements in deciding whether to deposit their funds with the bank.

In assessing whether a claim is direct or derivative, courts look beyond the labels employed by counsel and instead examine the body of the complaint. In re Sunrise Securities Litigation, 916 F.2d at 882. Here, the essence of plaintiffs' complaint is that they lost the uninsured portions of their deposits because the defendants looted the bank's assets and drove the bank into insolvency, all while misleading plaintiffs and other investors

-7-

into believing that the bank was financially stable.  The claims set forth in plaintiffs' complaint are derivative in nature.

Plaintiffs fail to allege an injury (lost deposits) which was separate and distinct from that suffered by other depositors or an injury involving a depositor which existed independently of the bank.  Plaintiffs alleged that all depositors relied on the same explicit or implicit fraudulent misrepresentations or omissions concerning the solvency of the bank and FDIC deposit insurance.

Such claims are derivative in nature and belong to the FDIC in its corporate capacity as receiver for the failed bank. See Downriver Community Federal Credit Union v. Penn Square Bank, 879 F.2d 754, 764-65 (10th Cir. 1989) (any remedy for fraudulent representations that affects or potentially affects all creditors of bank, belongs to the receiver who asserts such claims for the benefit of all creditors); Adato, 599 F.2d at 1117 ("wrongdoing by bank officers that adversely affects all depositors creates a liability which is an asset of the bank, and only the bank or its receiver may sue for its recovery"); Hamid v. Price Waterhouse, 51 F.3d 1411, 1420-21 (9th Cir. 1995) (depositors lacked standing to bring claims against individuals and firms accused of causing banks to fail); see generally M. Smith & B. Lee, Uninsured-Depositor Litigation: an Emerging Threat to Directors and Officers of Troubled Banks?, 14 No. 18 Andrews Sec. Litig. & Reg. Rep. 1 (January 13, 2009).

No. 1-07-1656

The plaintiffs, as depositors, lacked standing to assert causes of action properly belonging to the FDIC in its corporate capacity as receiver.  Therefore, the trial court properly dismissed plaintiffs' complaint for lack of standing pursuant to section 2-619(a)(9) of the Code.

In light of our determination regarding plaintiffs' lack of standing to maintain this action, we need not consider the other contentions raised by the parties. Tarkowski v. Scott, 79 Ill. App. 3d 787, 790, 398 N.E.2d 891 (1979).  Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GARCIA and LAMPKIN, JJ., concur.